1          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF KANSAS
2                    TOPEKA, KANSAS

3
        UNITED STATES OF AMERICA,     )
4       ------------------ Plaintiff,)
                                      )
5            vs.                      ) Case No.
                                      ) 15-40040-DDC
6       MAURICIO AGUILERA,            )
        ------------------ Defendant.)
7

8          TRANSCRIPT OF CHANGE OF PLEA HEARING

9            PROCEEDINGS had before the Honorable

10      Daniel D. Crabtree, United States District

11      Court Judge, for the District of Kansas,

12      Topeka, Kansas, on the 22nd day of September,

13      2015.

14
        APPEARANCES:
15
        For the Plaintiff:  Gregory G. Hough
16                          Office of the U.S. Attorney
                            290 U.S. Courthouse
17                          444 S.E. Quincy Street
                            Topeka, KS  66683
18
        For the Defendant:  Mark L. Bennett, Jr., Esq.
19                          BENNETT & HENDRIX L.L.P.
                            5605 S.W. Barrington Ct. S.
20                          Suite 201
                            Topeka, KS  66614-2489
21
                            Mauricio Aguilera
22                          Defendant

23      Court Reporter:     Sherry A. Harris, C.S.R.

24

25

1          PROCEEDINGS

2          THE COURT:  All right.  This is case

3     number 15-40040.  It's the United States of

4     America against, I'm not sure of the

5     pronunciation of the first name --

6     Mauricio --

7          MR. BENNETT:  Correct.

8          THE COURT:  --Mauricio Aguilera.

9     All right.  So let me start with your

10    appearances, please, counsel.

11          MR. HOUGH:  May it please the Court,

12    Your Honor, the government appears through

13    Assistant United States Attorney, Greg Hough.

14          THE COURT:  Good morning, sir.

15          MARK BENNETT:  Your Honor,

16    Mr. Aguilera appears in person with his

17    attorney, Mark Bennett.

18          THE COURT:  All right.  Mr. Aguilera

19    and Mr. Bennett, good morning to you.

20    Mr. Bennett, I understand that Mr. Aguilera

21    wishes to change his plea to Count 1 of the

22    indictment.  Is that correct?

23          MARK BENNETT:  That is correct, Your

24    Honor.

25          THE COURT:  And before we get far

down the road, I raised earlier at a hearing
in this case my belief that barring the
existence of exceptional circumstances that
this is-- if Mr. Aguilera does change his
plea to that charge, that this is a crime
that requires mandatory detention.  And I
just don't want to sandbag anyone with that
belief so I raise it.  Mr. Bennett, I trust
you have talked about this with Mr. Aguilera.

MARK BENNETT:  We have, Your Honor,
discussed it at length.  As the Court will
recall, when we were here before and that
issue came up, I requested that the Court
delay his sentencing -- or his plea -- until
I had an opportunity to discuss it at further
length with him.  That was about two weeks
ago, as I recall.  He and I had met right
after that hearing and discussed it at
length.  He flew into Topeka-- after he was
released, he went back to California and he
came into Topeka yesterday.  We've discussed
it further today prior to coming here.  He
understands the Court's concerns, and we're
here with that knowledge and information and
he is prepared to go ahead and enter his plea

1    at this time in effect on the basis of-- or,

2    with the understanding from the last hearing

3    that he will go into custody today.

4           THE COURT:  Very well.  Thank you

5    for sharing that background with me.

6           And, Mr. Aguilera, you followed all

7    this conversation?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And I don't know,

10   Mr. Bennett, whether you will, after we

11   finish the plea, want to be heard on the

12   exceptional circumstances issue.  If you do,

13   I am not prejudging that issue.  I just

14   wanted to be up front with my view of what

15   the law provides.

16          MARK BENNETT:  I understand, Your

17   Honor.

18          THE COURT:  All right.  Very well.

19          Mr. Aguilera, if you wish to change

20   your plea, as your attorney has stated, I'd

21   ask you to approach the lectern with

22   Mr. Bennett, and I'd ask Ms. Garrett to apply

23   the oath at this time.

24              (THEREUPON, the defendant was

25   sworn in open court).

1          THE COURT:  Good morning, sir.

2          THE DEFENDANT:  Good morning.

3          THE COURT:  Can you start by telling

4     us your full name, please?

5          THE DEFENDANT:  Mauricio Aguilera.

6          THE COURT:  Mauricio?

7          THE DEFENDANT:  Mauricio.

8          THE COURT:  Mauricio.  Thank you for

9     making sure I get that right.  Mr. Aguilera,

10    how old are you?

11         THE DEFENDANT:  Twenty-four.

12         THE COURT:  And it's apparent, but I

13    always ask it so let me confirm it with you.

14    Do you understand and speak English fluently?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Mr. Aguilera, my job at

17    this hearing, among other things, is to make

18    sure that you know what you're doing.

19         THE DEFENDANT:  Yeah.

20         THE COURT:  And that you really want

21    to do it.

22         THE DEFENDANT:  Uh-huh.

23         THE COURT:  So to do that job I'm

24    going to ask you what will seem like

25    hundreds, if not thousands, of questions.  It

1     won't be thousands but it may feel that way.

2     And I don't any of those questions to pry

3     needlessly into your background or in an

4     effort to embarrass you; I simply ask them as

5     part of doing my job, to make sure that you

6     know what you're doing.

7              I have had other people standing

8     where you are express the view that it feels

9     like or it sounds like I'm trying to talk you

10    out of pleading guilty, or them out of

11    pleading guilty.  And you may feel that

12    today.  I'm not.  I'm not trying to talk you

13    out of anything or into anything.  This is a

14    substantial decision in your life, and I'm

15    simply asking these questions to make sure,

16    as I said, that you know what you're doing.

17             THE DEFENDANT:  Okay.

18             THE COURT:  Mr. Aguilera, you have

19    rights during this hearing and they are--

20    they include the right to ask questions.

21             THE DEFENDANT:  Okay.

22             THE COURT:  You can ask me

23    questions.  If they're of a kind that I can

24    answer, I will answer them.  If you tell me,

25    your question doesn't make any sense to me,

1          I'll make it better because I don't want you

2          to answer a question that doesn't make sense.

3          Do you understand?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  The other right that I

6          want to emphasize is you have the right to

7          ask Mr. Bennett questions.  I know he's been

8          your counsel.  And as questions come up, we

9          may-- we may get to something that doesn't

10         sound familiar to you or you haven't talked

11         about with him before.  All you have to do is

12         just say, hold on a minute, I want to talk to

13         my lawyer, and we'll make accommodations for

14         that.  Do you understand?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  All right.  So let me

17         start with my questions and ask you, sir,

18         what is the highest or last level of

19         education that you've completed?

20                   THE DEFENDANT:  Twelfth.

21                   THE COURT:  You finished with a high

22         school degree?

23                   THE DEFENDANT:  No.

24                   THE COURT:  You finished twelfth

25         grade?

1                    THE DEFENDANT:  I--

2                    THE COURT:  You attended twelfth

3          grade?

4                    THE DEFENDANT:  I attended twelfth

5          grade.

6                    THE COURT:  All right.  Where was

7          that?

8                    THE DEFENDANT:  It was in Pomona,

9          California.

10                    THE COURT:  And what year did you

11         attend twelfth grade?

12                    THE DEFENDANT:  2008.

13                    THE COURT:  Have you earned a GED or

14         some comparable certificate?

15                    THE DEFENDANT:  No.

16                    THE COURT:  Mr. Aguilera, have you

17         ever in your life been treated for any sort

18         of mental health issues?

19                    THE DEFENDANT:  No.

20                    THE COURT:  Have you been treated

21         for drug abuse or drug addiction issues?

22                    THE DEFENDANT:  No.

23                    THE COURT:  Have you ever been

24         treated for alcohol abuse or addiction?

25                    THE DEFENDANT:  No.

1          THE COURT: As you stand there

2     today, are you under the influence of any

3     drugs?

4          THE DEFENDANT: No.

5          THE COURT: Are you under the

6     influence of any kind of alcohol or other

7     intoxicant?

8          THE DEFENDANT: No.

9          THE COURT: Do you take any

10    medication?

11         THE DEFENDANT: No.

12         THE COURT: Is there anything you

13    know of that-- well, let me just ask it this

14    way. Are you thinking clearly this morning?

15         THE DEFENDANT: Pardon me?

16         THE COURT: Are you thinking clearly

17    this morning?

18         THE DEFENDANT: Yes.

19         THE COURT: Is there anything that

20    is interfering with or limiting your ability

21    to understand what's going on in your

22    surroundings?

23         THE DEFENDANT: No.

24         THE COURT: Mr. Aguilera, do you

25    understand-- do you have-- let me start over.

1       Do you know the nature of the charges the

2       government has made against you in this case?

3                   THE DEFENDANT:  Yes.

4                   THE COURT:  And did Mr. Bennett

5       provide you with a copy of the indictment,

6       the pages that state those charges against

7       you?

8                   THE DEFENDANT:  Yes.

9                   THE COURT:  Did you read them?

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  Did you go over them

12      with Mr. Bennett?

13                  THE DEFENDANT:  Yes.

14                  THE COURT:  And do you believe you

15      understand the charges that the government

16      has made against you?

17                  THE DEFENDANT:  Yes.

18                  THE COURT:  Now, Mr. Aguilera,

19      Mr. Bennett has been your counsel throughout

20      the case?

21                  THE DEFENDANT:  Yes.

22                  THE COURT:  I want to ask if he has

23      explained a number of things to you, and let

24      me try to lump them together just to simplify

25      this a little bit.  You told me that

1          Mr. Bennett has explained the charges that

2     the government has made against you, correct?

3               THE DEFENDANT:  Yes, correct.

4               THE COURT:  I also want to ask if he

5     has gone over with you the evidence that the

6     government says it has and would present you

7     at trial?

8               THE DEFENDANT:  Yes.

9               THE COURT:  Has Mr. Bennett

10    explained to you that you have a right to a

11    jury trial and the process the same would

12    follow if you chose to take your case to a

13    jury trial?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Has Mr. Bennett also

16    explained the process that the sentencing

17    aspect of this case would follow if you in

18    fact plead guilty this morning?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Has he talked with you

21    about the sentencing statutes in the United

22    States Sentencing Guidelines?

23              THE DEFENDANT:  Yes.

24              THE COURT:  And has he talked with

25    you about the potential sentencing

1    consequences if you plead guilty this

2    morning?

3                THE DEFENDANT:  Yes.

4                THE COURT:  Has Mr. Bennett reviewed

5    your plea agreement with the government?

6                THE DEFENDANT:  Yes.

7                THE COURT:  And has he gone over

8    something called a Petition to Enter a Plea--

9                THE DEFENDANT:  Yes.

10               THE COURT:  --of Guilty that we'll

11   talk about later?

12               THE DEFENDANT:  Yes.

13               THE COURT:  And has Mr.-- have you

14   asked Mr. Bennett on these subjects-- all

15   these subjects, have you asked him all the

16   questions you wanted to ask?

17               THE DEFENDANT:  Yes.

18               THE COURT:  And has he answered all

19   the questions that you've asked to your

20   satisfaction?

21               THE DEFENDANT:  Yes.

22               THE COURT:  Are you fully satisfied

23   with the advice and legal representation and

24   counsel that Mr. Bennett has provided you as

25   your lawyer?

1                    THE DEFENDANT:  Yes.

2                    THE COURT:  Mr. Aguilera, I've been

3          provided a copy of what I am told is a plea

4          agreement between you and the government.

5          You have read that?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  We'll talk about it in

8          more detail in a moment, but let me just ask

9          broadly, who made the decision to enter into

10         that plea agreement with the government?

11                   THE DEFENDANT:  Myself.

12                   THE COURT:  Did anyone make it for

13         you?

14                   THE DEFENDANT:  No.

15                   THE COURT:  Did anyone coerce you or

16         force you to plead guilty?

17                   THE DEFENDANT:  No.

18                   THE COURT:  Has anyone threatened

19         you in any way to get you to plead guilty?

20                   THE DEFENDANT:  No.

21                   THE COURT:  Mr. Hough, I'm going to

22         ask you to, please, summarize the key terms

23         of the plea agreement between Mr. Aguilera

24         and the government.

25                   And, Mr. Aguilera, I'm going to ask

1        you to listen to what the prosecutor says

2        because I'll have some questions of you when

3        he finishes.

4                Sir.

5                MR. HOUGH:  Your Honor, the

6        defendant has agreed to enter a plea of

7        guilty to Count 1 of the indictment, to

8        withdraw any pending pretrial motions filed

9        in this matter, and to agree to criminal

10       forfeiture, consistent with the allegation in

11       the indictment in this case.  He has agreed

12       to stipulate to the factual basis for the

13       guilty plea in this matter, to waive Freedom

14       of Information Act request rights and his

15       appeal and collateral attack rights limited

16       to what is explained specifically in the

17       written plea agreement in this matter.

18                In turn for those things, the

19       government has agreed to bring no further

20       charges against him as a result of the

21       activities which form the basis of this

22       indictment and to dismiss any remaining

23       charges pending against him, to recommend a

24       sentence at the low end of the appropriately

25       calculated guideline range, not oppose

1     application of the safety valve provisions of

2     the guidelines if the defendant qualifies

3     under each of the five subparagraphs of the

4     safety valve, as determined by the probation

5     officer who authors the presentence

6     investigation report, and to recommend that

7     he receive full credit for acceptance of

8     responsibility under the guidelines.  That

9     would be our agreement.

10          THE COURT:  Mr. Aguilera, is your

11    understanding of your plea agreement with the

12    government consistent with everything that

13    the prosecutor just said?

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  I'm going to

16    ask you some specific questions and I'm going

17    to try to tie them to specific paragraphs in

18    the plea agreement.  And I'll bet Mr. Bennett

19    has a copy of the plea agreement right there

20    on the lectern, and so it might help if you

21    refer to the paragraphs as I ask about them.

22          THE DEFENDANT:  Okay.

23          THE COURT:  All right.  I'm looking

24    at the first paragraph on page 1 and it says

25    that you are agreeing to plead guilty to

1     Count 1 of the indictment.  Is that your

2     understanding of your agreement with the

3     government?

4            THE DEFENDANT:  Yes.

5            THE COURT:  And do you understand

6     that that count, that part of the indictment,

7     charges you with participating in a

8     conspiracy to possess with the intent to

9     distribute 2,721 grams or more of

10    methamphetamine?

11           THE DEFENDANT:  Yes.

12           THE COURT:  I'm looking now at the

13    second paragraph on page 2, Mr. Aguilera, and

14    in that there is a paragraph that's called

15    Factual Basis for the Guilty Plea.  Let me

16    explain the role of the factual basis.  In

17    our court, we don't let people plead guilty

18    just because they say they want to.  They

19    actually and factually have to be guilty of

20    the crime they're pleading guilty to.  And so

21    I want to ask you some questions about the

22    facts that make it appropriate for you to

23    plead guilty to Count 1 of the indictment.

24           And looking at paragraph 2, it says

25    that you and Ivan Joseph Soto combined with

1       one another and with other persons to possess

2       with the intention to distribute about 2,700

3       grams of methamphetamine.  Did you do that?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  Tell me how-- tell me

6       what you did.

7                    THE DEFENDANT:  I transported the

8       methamphetamine to Ivan.

9                    THE COURT:  To where?

10                   THE DEFENDANT:  To Ivan, the

11      codefendant.

12                   THE COURT:  To Mr. Soto?

13                   THE DEFENDANT:  Yeah.

14                   THE COURT:  And you transported it

15      from where to where?

16                   THE DEFENDANT:  From Arizona.

17                   THE COURT:  To where?

18                   THE DEFENDANT:  To Topeka.

19                   THE COURT:  All right.  And you

20      were-- did you actually deliver the

21      methamphetamine to Mr. Soto?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  And as you understood

24      it, what was Mr. Soto going to do with the

25      methamphetamine that you delivered?

```
 1                    THE DEFENDANT:  Pardon me?

 2                    THE COURT:  What was Mr. Soto going

 3          to do--

 4                    THE DEFENDANT:  I have no idea what

 5          he was going to do after that.  I was just

 6          delivering it.

 7                    THE COURT:  Did you know whether he

 8          planned to use it himself or whether he

 9          planned to sell it?

10                    THE DEFENDANT:  He can't use it all

11          so I figured he would sell it.

12                    THE COURT:  All right.  And when you

13          delivered it to Mr. Soto, you brought it to

14          Topeka, the methamphetamine?

15                    THE DEFENDANT:  Yes.

16                    THE COURT:  And that delivery

17          happened here in Topeka in the State of

18          Kansas?

19                    THE DEFENDANT:  Yes.

20                    THE COURT:  And it was sometime in

21          April of this year?

22                    THE DEFENDANT:  Yeah.

23                    THE COURT:  Did you know what you

24          were doing was against the law?

25                    THE DEFENDANT:  Yeah.
```

1          THE COURT:  And did you know

2     methamphetamine was a substance-- a drug that

3     people weren't supposed to possess?

4          THE DEFENDANT:  Yeah.

5          THE COURT:  You knew it was illegal?

6          THE DEFENDANT:  I knew it was

7     illegal.

8          THE COURT:  Why did you do this?

9          THE DEFENDANT:  Money.

10          THE COURT:  Mr. Aguilera, I'm going

11     to turn now to page 3 of this plea agreement.

12     And this provision, this paragraph, says that

13     the parties, meaning you and the government,

14     are asking the Court -- I'll be doing the

15     work for the Court in your case -- to apply

16     the United States Sentencing Guidelines to

17     calculate your sentence.  Do you understand

18     that's how your sentence will be determined

19     if you in fact plead guilty today?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And we talked earlier

22     about the sentencing guidelines, a moment ago

23     in this hearing.  Those are guidelines

24     developed by the United States Sentencing

25     Commission which help courts around the

1     country try to treat people who've done

2     similar things consistent with one another.

3     That's just background.  The real thing I

4     want to make sure you understand is I can't

5     tell you today what your sentence will be

6     because there will be a process that will

7     lead to the application of those sentencing

8     guidelines.  Is that consistent with how you

9     heard this was going to go?

10              THE DEFENDANT:  Yes.

11              THE COURT:  All right.  So the real

12    thing I want to make sure you understand is

13    if you plead guilty today and we get to

14    sentencing and I impose a sentence that you

15    don't like, you don't agree with, you think

16    is too harsh, you won't be allowed to

17    withdraw your guilty plea.  Do you understand

18    that?

19              THE DEFENDANT:  Yes.

20              MR. BENNETT:  Judge, can I interject

21    something--

22              THE COURT:  Please.

23              MARK BENNETT:  --at this point?  I

24    would advise the Court that I have gone over

25    the sentencing guidelines with him and I have

1    also indicated to him, in addition to what

2    the Court has indicated, that if he disagrees

3    or if we disagree with the calculation that

4    has been made by the presentence writer that

5    we do have a right to raise that issue with

6    the Court at the time of sentencing.  So he

7    is aware of that as well.

8            THE COURT:  And, Mr. Aguilera,

9    Mr. Bennett is right and he makes a good

10   point.  If there are parts-- what will happen

11   is the United States Probation Office will

12   meet with you and conduct a presentence

13   interview and conduct a presentence

14   investigation about you and your background

15   and if you have a past criminal record about

16   that.  And they will write a report.  And you

17   have the chance to read that report, go over

18   it with Mr. Bennett.  And if you think parts

19   of it are wrong, you have the right to object

20   to that report--

21           THE DEFENDANT:  All right.

22           THE COURT:  --and present that to

23   the Court for a ruling, for a determination.

24   Is that consistent with what you understood--

25           THE DEFENDANT:  Yes.

```
1              THE COURT:  --would happen?  Okay.
2              Mr. Bennett, is that the point you
3       were making?
4              MARK BENNETT:  Yes, Your Honor.  I
5       just wanted to make sure--
6              THE COURT:  Yeah.
7              MR. BENNETT:  --that he understood
8       that he did have a right to object to
9       whatever the PSR writer comes up with.
10             THE COURT:  That is absolutely
11      right, Mr. Aguilera, and we will go through
12      those objections if there are in fact
13      objections at sentencing.
14             I do want you to understand what the
15      maximum penalties that can be imposed under
16      this guilty plea are and so I'm going to ask
17      the prosecutor to articulate those for you.
18             THE DEFENDANT:  Okay.
19             THE COURT:  I want to make clear no
20      one is saying at this stage that this will be
21      the penalty that is imposed on you, but you
22      deserve to know what the maximum penalty is
23      and so I'm going to ask him to say it.
24             Mr. Hough.
25             MR. HOUGH:  Your Honor, it's not
```

1   less than 10 years, nor more than life

2   imprisonment; a term of supervised release of

3   at least five years, in addition to any term

4   of imprisonment ordered by the Court; a fine

5   of $10 million; mandatory special assessment

6   in the amount of $100; and forfeiture of any

7   criminal proceeds or monies or items used to

8   facilitate the crime that he is pleading

9   guilty to.

10          THE COURT:  All right.  So,

11  Mr. Aguilera, did you understand what the

12  prosecutor said?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And so if you plead

15  guilty to Count 1 today, at least under the

16  provisions of that statute, and we'll talk

17  about this in more detail in just a moment,

18  you are subject to time in prison of at least

19  10 years and as long as life.  Do you

20  understand that?

21          THE DEFENDANT: Yes.

22          THE COURT:  Do you still wish to

23  plead guilty?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You are also going to be

1          subject to being put on a term of supervised

2          release after you come out of prison.  And

3          what that means is that you will be required

4          to live and report to the probation office

5          under certain conditions.  Is that consistent

6          with what you understood would happen at the

7          end of your time in prison?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  And if you violate those

10         conditions, you are-- there is the

11         possibility that you will be sentenced to go

12         back to prison.  Do you understand that?

13                   THE DEFENDANT: Yes.

14                   THE COURT:  Mr. Bennett, I know

15         there was discussion during the prosecutor's

16         presentation of the plea agreement about the

17         application of the safety valve.

18                   MARK BENNETT:  Yes.

19                   THE COURT:  Have you gone over the

20         safety valve with Mr. Aguilera?

21                   MARK BENNETT:  Judge, we have and

22         we've discussed that on more than one

23         occasion and what that amounts to and what

24         may or may not make it applicable or

25         inapplicable.

THE COURT: And, Mr. Aguilera, first
of all, what Mr. Bennett has said, you've
talked with him about the possibilities of
the safety valve?

THE DEFENDANT: Yes.

THE COURT: Shortening your
sentence?

THE DEFENDANT: Yes.

THE COURT: You understand that no
one can tell you today whether you will
qualify for that safety valve?

THE DEFENDANT: Yes.

THE COURT: And if you don't
qualify, for instance, and at the end of the
process I determine you're not eligible for
that shortening of your sentence under the
safety valve, you cannot withdraw your guilty
plea.

THE DEFENDANT: Yes.

THE COURT: Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you still want to
plead guilty?

THE DEFENDANT: Yes.

THE COURT: Mr. Aguilera, under the

```
1          paragraph that's called Relevant Conduct,

2          this is an idea, a concept, that's in the

3          sentencing guidelines.  And in short form it

4          says that the Court can consider other things

5          that the balance of evidence shows you've

6          done even though you're not pleading guilty

7          to those things to determine your sentence.

8          Do you understand that?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  And then on the next

11         page there are, in the single-spaced, the

12         single-spaced paragraphs, looking at really

13         paragraphs C, D, and E, there are places

14         where the government says, for instance, it

15         will recommend a sentence at the low end of

16         the guideline range and it will recommend

17         that you receive a reduction for accepting

18         responsibility.  And the government says in

19         paragraph D that it won't oppose application

20         of the safety valve.  Do you understand that

21         that's what the government says it will do?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  But that the government

24         doesn't get to make the decision for the

25         Court?
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  So in other words, the

3     government could do all these things that it

4     says it's going to do in paragraph 5 and I

5     could determine that their position is not

6     right.  I'm not bound by their

7     recommendations.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Mr. Aguilera, on page 6

10    in paragraph 8 it says that you are agreeing

11    to forfeit $4,500 in United States currency.

12    Do you see that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Is that true?

15         THE DEFENDANT:  Yes.

16         THE COURT:  You had possession of

17    $4,500; is that correct?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And the government, in

20    one fashion or another, took custody of that

21    money?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And it says in this

24    agreement that you're agreeing the government

25    can keep that money.  Is that true?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And where did this

3     $4,500 come from?

4          THE DEFENDANT:  From the

5     codefendant.

6          THE COURT:  From Mr. Soto?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Is it what he paid you

9     when you delivered the methamphetamine?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Mr. Aguilera, on page 7

12     in paragraph 9, we talked about this earlier,

13     this is the paragraph that says that if you

14     don't agree with the sentence that you will

15     not be permitted to change or withdraw your

16     plea of guilty.  You understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  Paragraph 11

19     on page 8 is a very important aspect of your

20     agreement.  Mr. Aguilera, ordinarily a person

21     in your position who is convicted of a crime

22     has the right to appeal and has the right to

23     appeal from the sentence that's imposed as a

24     result of that conviction.  In paragraph 11,

25     as I understand it, you are giving up a

1        substantial part of your right to appeal.  Is

2        that consistent with your understanding of

3        your agreement with the government?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  And you wish-- you're

6        willing to do that, to give up your right to

7        appeal as it's described in this paragraph?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  And then on page 10 of

10       the plea agreement in paragraph 15, I'm

11       looking really at the last sentence of

12       paragraph 15, it says that this plea

13       agreement embodies each and every term of the

14       agreement between the parties.  Which, I

15       understand this to mean that everything

16       you've agreed to with the government and the

17       government has agreed to with you is

18       contained in this written plea agreement.  Is

19       that true?

20                    THE DEFENDANT:  Yes.

21                    THE COURT:  And is that your

22       understanding of your agreement with the

23       government?

24                    THE DEFENDANT:  Yes.

25                    THE COURT:  There are no oral

```
1          promises that aren't written down here; is

2          that true?

3                    THE DEFENDANT:  True.

4                    THE COURT:  Are there any side deals

5          with the government that aren't written down

6          in your plea agreement?

7                    THE DEFENDANT:  I didn't hear you.

8                    THE COURT:  Are there any side deals

9          that you've made with the government?

10                   THE DEFENDANT:  No

11                   THE COURT:  Mr. Aguilera, one of the

12         consequences of pleading guilty to Count 1 of

13         the indictment is that you are waiving, that

14         is you are giving up, your right to a trial,

15         to a jury trial on that charge.  Do you

16         understand that?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  And so what that means

19         is if you plead guilty this morning and I

20         accept your plea, there's not going to be a

21         trial -- not to a judge, not to a jury, not

22         to anyone -- on this charge against you.  Is

23         that consistent with your understanding?

24                   THE DEFENDANT:  Yes.

25                   THE COURT:  And do you still want to
```

1          plead guilty?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Let me explain a little

4          bit about what you're giving up when you give

5          up your right to trial.  First of all, at a

6          trial you would have the right to be

7          represented by a lawyer, by Mr. Bennett, even

8          if you can't afford to pay one.  At this

9          trial you would be guaranteed the right to

10         have a jury decide your guilt or innocence

11         under the charge.  And that jury could

12         convict you only if all 12 of its members

13         agreed that the government had proved beyond

14         a reasonable doubt that you are guilty.  Do

15         you understand that is the nature of the jury

16         trial that you're giving up by pleading

17         guilty?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  Mr. Aguilera, at this

20         trial you would be presumed innocent of any

21         crime.  Do you understand that?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  Do you understand that

24         this presumption is by itself enough for the

25         jury to find you not guilty?

1          THE DEFENDANT:  Yes.

2          THE COURT:  So it means that at a

3     jury trial you wouldn't have to prove

4     anything.  And I would tell government that.

5     I would say, the defendant doesn't have to

6     prove anything to you in order for you to

7     find him not guilty.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And do you understand

10    that concept would apply at your trial?

11         THE DEFENDANT:  Yes.

12         THE COURT:  At a trial on this

13    charge, Mr. Aguilera, you could testify or

14    you could choose not to testify.  And if you

15    chose not to testify, I would tell the jury

16    that they could not consider in any way your

17    decision not to testify in deciding whether

18    you are guilty.  Do you understand you have

19    those rights?

20         THE DEFENDANT:  Yes.

21         THE COURT:  You would have the right

22    to use the Court's power to subpoena

23    witnesses to get witnesses to come to the

24    courthouse and testify in a way that might

25    favor you.  Do you understand you would have

1           that right?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  And at this trial, if

4           you decided to take your case to trial, you

5           would have the right for Mr. Bennett to

6           cross-examine all the witnesses that the

7           government would call.  Do you understand you

8           would have that right?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  Mr. Aguilera, are you a

11          citizen of the United States?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  There are-- I ask

14          because there are consequences to pleading

15          guilty to a felony that go beyond this case.

16          A guilty plea can have important

17          consequences, can cause you to lose valuable

18          civil rights.  So, for instance, if you plead

19          guilty this morning, you stand to lose civil

20          rights such as your right to sit on a jury,

21          your right to vote, your right to hold public

22          office, your right to purchase and possess a

23          firearm.  Do you understand you stand to lose

24          all those valuable civil rights if you plead

25          guilty today?

1                    THE DEFENDANT:  Yes.

2                    THE COURT:  Mr. Aguilera, we talked

3          about the sentencing consequences of your

4          decision.  Can I just confirm that you've

5          gone over with Mr. Bennett the possible

6          sentences that can be imposed on you if you

7          plead guilty to Count 1?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  And you heard the

10         prosecutor announce the maximum penalties.  I

11         do want to ask the prosecutor one other

12         question.

13                   Am I correct, Mr. Hough, that unless

14         Mr. Aguilera qualifies for the safety valve,

15         that he is subject to a mandatory minimum

16         sentence?

17                   MR. HOUGH:  The safety valve or if

18         he at some point in time changes his mind and

19         agrees to attempt to provide substantial

20         assistance to the government, which based

21         upon his under-oath admissions in response to

22         the Court's questions here today very well

23         might qualify him under a 5K if he were

24         willing to testify against Soto, consistent

25         with his testimony here today.

1    THE COURT:  But absent those, does

2    Mr. Aguilera face a mandatory minimum amount

3    of time in prison?

4    MR. HOUGH:  Yes, sir.  Ten years.

5    THE COURT:  All right.

6    You understand that unless other

7    things happen the minimum amount of time you

8    would spend in prison is 10 years?

9    THE DEFENDANT:  Yes.

10    THE COURT:  Do you wish-- do you

11    still want to plead guilty?

12    THE DEFENDANT:  Yes.

13    THE COURT:  Mr. Aguilera, in the

14    federal system, federal court system, there's

15    no parole.  And so if you are sentenced to

16    time in prison, as you are likely to be, you

17    will serve the entire term of your sentence.

18    You will not be released early on parole.  Do

19    you understand that?

20    THE DEFENDANT: Yes.

21    THE COURT:  Has Mr. Bennett

22    explained to you that one of the things the

23    sentencing guidelines will consider is your

24    past history, including any criminal history

25    that you have?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And has he explained to

3    you that if you have a history of committing

4    other crimes before this charge against you

5    that that is likely to make your sentence

6    harsher?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has Mr. Bennett

9    explained to you that one of the factors the

10   sentencing guidelines will consider is the

11   amount, the weight of the drugs--

12         THE DEFENDANT:  Yes.

13         THE COURT:  --that was involved in

14   the conspiracy you are saying you

15   participated in?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And just to confirm,

18   Mr. Aguilera, no one in this courtroom can

19   predict with certainty what your actual

20   sentence is going to be if you plead guilty

21   today.  Do you understand that?

22         THE DEFENDANT: Yes.

23         THE COURT:  Do you still want to

24   plead guilty anyway?

25         THE DEFENDANT:  Yes.

1              THE COURT:  Mr. Bennett, has

2      Mr. Aguilera, with your assistance, prepared

3      a petition to enter a plea of guilty?

4              MARK BENNETT:  Yes, we have, Your

5      Honor.

6              THE COURT:  And has Mr. Aguilera

7      reviewed that?

8              MARK BENNETT:  He has, Your Honor.

9      He reviewed it a couple of weeks ago when we

10     were here, he reviewed it again this morning

11     before we came to court.

12             THE COURT:  And did you have an

13     opportunity for him to ask you any questions

14     he had about that petition?

15             MR. BENNETT:  Yes.  We spent a

16     couple of hours in my office earlier this

17     morning, Your Honor.

18             THE COURT:  Thank you, sir.  Has

19     Mr. Aguilera signed the petition?

20             MARK BENNETT:  He has not signed it

21     yet.  I thought it better to do it in open

22     court.

23             THE COURT:  You and I share that

24     view.

25             Mr. Aguilera, if it is still your

1    desire to plead guilty to Count 1, then I

2    would ask you to sign the petition asking the

3    Court to enter a plea of guilty.

4                    (THEREUPON, the document was

5    executed in open court).

6                    MARK BENNETT:  Your Honor, both

7    Mr. Aguilera and myself now have signed it,

8    and with permission of the Court I'll

9    approach and hand it to you.

10                   THE COURT:  Please.  And has

11   Mr. Aguilera signed the plea agreement as

12   well?

13                   MARK BENNETT:  He has not signed it

14   yet, I don't believe.  Let me double-check.

15   I may have had him go ahead and sign it.  He

16   signed that back when we were here before,

17   Your Honor.

18                   THE COURT:  All right.  Can I ask

19   you to submit that as well, please?

20                   MARK BENNETT:  Yes.

21                   THE COURT:  Thank you very much,

22   Mr. Bennett.

23                   Mr. Aguilera, your attorney has

24   handed me a document that's called Petition

25   to Enter Plea of Guilty.  And near the end of

that document there is a signature line and
below it it says the word defendant and
there's a signature on that line.  Is that
signature your signature?

THE DEFENDANT:  Yes.

THE COURT:  And did you mean for
your-- when you placed your signature on this
petition, did you mean that to signify that
you agreed with all the statements that are
contained in the petition?

THE DEFENDANT:  Yes.

THE COURT:  Did you mean for it to
signify that all the statements in the
petition are true and correct ones?

THE DEFENDANT:  Yes.

THE COURT:  And, Mr. Aguilera, this
petition to enter plea has a number of things
that are filled out in handwriting.  Do you
remember that?

THE DEFENDANT:  Yes.

THE COURT:  And just to confirm for
the record, the handwriting that is used to
complete the various blanks in the petition,
that handwriting was on there when you signed
it; is that true?

1        THE DEFENDANT:  Yes.

2        THE COURT:  Then, Mr. Aguilera, I'm

3    looking now at your-- what says is your plea

4    agreement between the government and you.  Is

5    that what that is?

6        THE DEFENDANT:  Yes.

7        THE COURT:  And on the last page of

8    that document, which is numbered page 11,

9    this is a place calling-- well, there's a

10    signature line that says, I don't want to

11    butcher your first name, remind me--

12        THE DEFENDANT:  Mauricio.

13        THE COURT:  Mauricio.  There's a

14    signature line and below it are the words

15    Mauricio Aguilera.

16        THE DEFENDANT:  Yes.

17        THE COURT:  There's a signature on

18    that line.  Is that your signature?

19        THE DEFENDANT:  Uh-huh, yeah.

20        THE COURT:  And did you mean for

21    your signature on the plea agreement to

22    signify your agreement to all the terms and

23    provisions in that written plea agreement?

24        THE DEFENDANT:  Yes.

25        THE COURT:  And it shows that you

1          signed the plea agreement back on

2          September 8th.  I think that's when you were

3          in this courtroom earlier; is that correct?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  And even though you

6          signed it on September 8th, do you still wish

7          to enter into this plea agreement with the

8          government today?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  Mr. Hough, I, in a

11         moment, am going to ask Mr. Aguilera how he

12         wishes to plea on Count 1 of the indictment.

13         Do you know of any reason Mr. Aguilera should

14         not plead guilty to that charge?

15                   MR. HOUGH:  No, Judge.

16                   THE COURT:  And likewise,

17         Mr. Bennett, do you know--

18                   MARK BENNETT:  No, Your Honor.  I

19         have reviewed all of the discovery and have

20         talked at length with my client, and I know

21         of no reason he should not sign it.

22                   THE COURT:  Very well.  Does

23         Mr. Aguilera wish for the indictment to be

24         read here in open court?

25                   MARK BENNETT:  Wish for what, Your

1    Honor?

2                THE COURT:  Does he wish for the

3    Court to read the indictment here in open

4    court?

5                THE DEFENDANT:  No.

6                MARK BENNETT:  No, Your Honor.

7                THE COURT:  All right.

8                So, Mr. Aguilera, I'm going to ask

9    you in just a moment what your plea is to

10   Count 1 of the indictment.  Before I ask you

11   that question formally, do you still wish to

12   plead guilty today?

13               THE DEFENDANT:  Yes.

14               THE COURT:  All right.  So I ask

15   you, sir:  How do you plead to Count 1 of the

16   indictment?  Guilty or not guilty?

17               THE DEFENDANT:  Guilty.

18               THE COURT:  The Court finds that the

19   defendant, Mauricio Aguilera, is mentally

20   competent and that he is not only mentally

21   competent today but that he was mentally

22   competent at the time he committed the crime

23   charged by Count 1 of the indictment.

24               The Court finds that Mr. Aguilera's

25   decision to plead guilty to Count 1 is an

1    informed decision made after he received

2    advice and the representation of highly

3    competent counsel; that Mr. Aguilera

4    understands and understood the charges and

5    factual basis for those charges, the evidence

6    the government says it has.

7              The Court also finds that

8    Mr. Aguilera understands his options,

9    including the right to a jury trial and the

10   process his case would follow if he elected

11   to take it to trial instead of pleading

12   guilty.

13             The Court also finds that

14   Mr. Aguilera understands the potential

15   consequences for his civil rights if he

16   pleads guilty and the potential sentencing

17   consequences he faces on his guilty plea to

18   Count 1.

19             The Court finds that Mr. Aguilera's

20   decision to plead guilty to Count 1 is a

21   knowing and voluntary decision that is

22   supported by an independent basis in fact

23   that contains every essential element of the

24   crime charged by Count 1.

25             Therefore, Mr. Aguilera, I'm

1    accepting your guilty plea and you are now

2    adjudged guilty of the crime charged by

3    Count 1 of the indictment.

4            Consistent with that, Mr. Bennett, I

5    am signing the proposed order that you

6    submitted with Mr. Aguilera's petition and

7    dating it today's date, which is the 22nd of

8    September, 2015.

9            I am ordering the probation office

10   to conduct a presentence investigation.  And

11   subject to counsels's availability, I am

12   setting sentencing for 1:30 in the afternoon

13   on December 14th, 2015.  Is that day

14   available to counsel?

15           MARK BENNETT:  Did you say December

16   the 14th, Your Honor?

17           THE COURT:  I did, sir.

18           MARK BENNETT:  Could I double-check

19   my calendar?

20           THE COURT:  You may.  Please.

21           MARK BENNETT:  Judge, that appears

22   to be fine.  I start a jury trial on December

23   the 11th, but I think it's just a two-day--

24   going to be a two-day trial at most and so I

25   don't think there will be a problem.

1          THE COURT:  All right.  Very well.

2     We'll set it for December 14th.  And if your

3     trial runs long, Mr. Bennett, then you just

4     need to let Ms. Garrett know and we'll get it

5     rescheduled--

6          MR. BENNETT:  I'm fine with that.

7          THE COURT:  --for a date when you're

8     available.

9          Mr. Bennett, as we've discussed,

10    Count 1 of the indictment states a charge

11    that in my view is a mandatory detention

12    crime and requires Mr. Aguilera at this time

13    to go into custody unless exceptional

14    circumstances exist that would excuse that

15    result.  Do you wish to be heard on that

16    issue?

17          MARK BENNETT:  Only very briefly,

18    Judge.  And I understand the Court's

19    position.  My concern when we were here

20    before was that Mr. Aguilera has a wife and

21    not a newborn but nearly newborn child in

22    California, and he was concerned about their

23    wellbeing and making arrangements for them

24    while he's in prison.  The Court graciously

25    allowed us to delay this plea.  He returned

1          to California and was able to get

2          arrangements made so-- and I've discussed

3          with him some this morning and he's ready to

4          commence serving his sentence, Your Honor.

5          So I don't want to concede anything, but at

6          the same time we're saying we're not raising

7          that issue at this point.

8                    THE COURT:  All right.  Very well.

9                    Mr. Aguilera, first of all, I

10         commend you on making arrangements for your

11         family.  I don't view those circumstances to

12         qualify as exceptional ones in the sense that

13         the court of appeals has defined them and so

14         I'm going to remand-- at the end of this

15         hearing I'm going to remand you to the

16         custody of the United States Marshal Service.

17                    Before we conclude this hearing, do

18         you have any questions about anything that's

19         happened today?

20                    THE DEFENDANT:  No.

21                    THE COURT:  All right.  I thank you

22         for your patience with my questions.  I told

23         you there would be many of them.  I apologize

24         for the length of that.  Thank you for your

25         patience.

1          With that, Mr. Hough, is there

2     anything else that we ought to take up?

3          MR. HOUGH:  No, Judge.

4          THE COURT:  Mr. Bennett, just to

5     complete my record, I think there are a

6     couple of motions that are pending and I

7     think under the plea agreement the defendant

8     has agreed to withdraw those and so unless

9     there is objection, the defendant's motion to

10    exclude evidence, document 30, and the

11    defendant's motion to suppress, document 34,

12    will be overruled as moot.  Is there any

13    objection to that?

14          MARK BENNETT:  No, Your Honor.

15          THE COURT:  All right.  Very well.

16    We'll be in recess on this matter.  Thank you

17    very much.

18               (THEREUPON, the hearing

19    concluded).

20

21

22

23

24

25

```
1        UNITED STATES OF AMERICA  )
                                   )    ss:
2        DISTRICT OF KANSAS        )

3

4                    C E R T I F I C A T E

5

6            I, Sherry A. Harris, Certified Shorthand

7        Reporter in and for the State of Kansas, do

8        hereby certify that I was present at and

9        reported in machine shorthand the proceedings

10       had the 22nd day of September, 2015, in the

11       above-mentioned court; that the foregoing

12       transcript is a true, correct, and complete

13       transcript of the requested proceedings.

14           I further certify that I am not attorney

15       for, nor employed by, nor related to any of

16       the parties or attorneys in this action, nor

17       financially interested in the action.

18           IN WITNESS WHEREOF, I have hereunto set

19       my hand and official seal at Topeka, Kansas,

20       this 29th day of September, 2015.

21

22                    /s/ Sherry A. Harris
                      Certified Shorthand Reporter
23

24

25
```